July 28, 2023

**Supreme Court**

No. 2020-244-Appeal.
(WC 18-636)

Green Development, LLC a/k/a Wind    :
    Energy Development, LLC

           v.                 :

   Town of Exeter et al.          :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Green Development, LLC a/k/a Wind :
    Energy Development, LLC

            v.                          :

Town of Exeter et al.                  :


Present: Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

### O P I N I O N

**Justice Long, for the Court.** This matter arises from a decision by the defendant, the Town of Exeter[1] (defendant or the town), to pause, and subsequently to amend, its zoning ordinance, which prevented the plaintiff, Green Development, LLC a/k/a Wind Energy Development, LLC (plaintiff), from developing three commercial solar-field projects (solar-field projects) in Exeter, Rhode Island. The plaintiff appeals from a judgment of the Superior Court in favor of the defendant in this action seeking injunctive and declaratory relief, as well as damages and attorneys' fees.

---

[1] The plaintiff also brought this action against each member of the Exeter Town Council and the Treasurer of the Town of Exeter in their official capacities. We refer to the town itself exclusively for the sake of clarity and to remain consistent with the Superior Court.

The plaintiff challenges the Superior Court's denial of its request (1) to enjoin the town's enforcement of an emergency moratorium ordinance that prevented review of plaintiff's solar-field projects; (2) to declare as *ultra vires* the enactment of the moratorium ordinance, and that the moratorium ordinance was void *ab initio*; (3) to declare that plaintiff's solar-field projects are vested pursuant to G.L. 1956 § 45-24-44 of the Rhode Island Zoning Enabling Act (Zoning Enabling Act); (4) to declare that the moratorium ordinance violates the doctrine of equitable estoppel and is thus inapplicable to plaintiff's solar-field projects; and (5) to declare that the town's enactment of the moratorium ordinance violates plaintiff's procedural and substantive due-process rights.

For the reasons stated herein, we affirm the judgment of the Superior Court.

**Facts and Procedural History**

In July 2018, the Exeter Town Council adopted a zoning ordinance (the Green ordinance) that authorized the construction of commercial solar fields as of right in RU-3 and RU-4 zones in Exeter, so long as they conformed with specific lot and acreage requirements. The Green ordinance removed many of the then-existing zoning restrictions on commercial solar fields previously established in a 2015 ordinance. The town council approved the Green ordinance despite concerns from local officials including the town's planning board. Specifically, these concerns stemmed from the number of outstanding applications before the town and the

- 2 -

potential overdevelopment of commercial solar fields in Exeter. Further, this threat of overdevelopment created a concern that the proposed projects would not comply with Exeter's comprehensive plan.

On October 16, 2018, after the town council adopted the Green ordinance, plaintiff filed three submissions with the town planner for development of three solar-field projects in RU-3 and RU-4 zones (October submissions).[2] The plaintiff submitted three "Application for Land Development, Subdivision of Land, and/or Development (Site) Plan Review" forms; under "application type" on each form, plaintiff selected "pre-application." Additionally, the letter of transmittal accompanying each of the October submissions noted that plaintiff was submitting materials for pre-application plan review of the relevant proposed solar-field project. The town planner classified plaintiff's October submissions as pre-applications for master plan review pursuant to Rhode Island's land development statutory framework. The first step in the master plan review process involves an applicant submitting information for review and discussion with the planning board and may eventually result in the issuance of letters of completeness by the town planner.

---

[2] Before plaintiff filed its October submissions, the town council adopted a new ordinance on September 4, 2018, that would have likely prohibited plaintiff's solar-field projects. The town council rescinded the September 2018 ordinance during its October 2018 meeting, effectively reinstating the Green ordinance.

On November 6, 2018, town voters elected new members of the town council; at some point thereafter, but prior to the November 22, 2018 inauguration, a newly-elected town council member, Calvin Ellis, discussed with the town planner the possibility of issuing a moratorium on new solar development projects. Based on the town planner's status as a part-time employee and the influx of applications the town received for solar-field projects, the town planner agreed that a moratorium would allow the town to meet the rising demand given its finite resources. As a result of this conversation, Mr. Ellis asked the town planner to draft initial language for an ordinance accomplishing that purpose. Additionally, although the town's planning board typically reviews an applicant's submissions one month after filing, due to time constraints at the November 27, 2018 planning board meeting, the planning board did not review plaintiff's October submissions and instead planned to review them at a January 2019 meeting.

On December 10, 2018, the town council enacted a sixty-day moratorium ordinance applicable "to all proceedings, applications and petitions not vested pursuant to [G.L. 1956 §] 45-24-44 * * *." Section five of the moratorium ordinance contains a vesting clause that defines a vested application as a proposal for solar-field project "for which an applicant has submitted all the required materials for a Master Plan meeting * * * and has been certified complete by the Administrative Officer * * *." When the town enacted the moratorium ordinance, plaintiff's

October submissions remained pending and had not been certified as complete. The plaintiff filed an action challenging the validity of the moratorium ordinance the following day.[3]

On January 7, 2019, the town amended its zoning ordinance to change its definition and description of vested rights; thereafter, on February 4, 2019, the town council enacted a final ordinance prohibiting utility-scale solar-field projects in RU-3 and RU-4 residential zones.

On March 21, 2019, the Superior Court denied plaintiff's request to enjoin enforcement of the emergency moratorium and rejected plaintiff's request for a declaration invalidating the moratorium. The trial justice ultimately determined, among other things, that the town permissibly enacted the moratorium ordinance pursuant to its emergency powers under Article IV, § 411 of the Exeter Town Charter. In a subsequent decision on cross-motions for summary judgment, issued on May 13, 2020, the trial justice rejected plaintiff's claim that its October submissions fell beyond the scope of the moratorium based on plaintiff's theory that

---

[3] The plaintiff's complaint sought the following: (1) a declaratory judgment that sought to enjoin the enforcement of the moratorium ordinance based on a violation of Rhode Island law; (2) a declaration that the moratorium ordinance violated the Exeter Town Charter; (3) a declaration concluding that plaintiff's applications vested pursuant to the Zoning Enabling Act; (4) a declaration determining that the moratorium does not apply to plaintiff's applications based on the doctrine of equitable estoppel; (5) a declaration determining that the town violated plaintiff's substantive and procedural due-process rights; and (6) an award of attorneys' fees.

the submissions vested pursuant to § 45-24-44. The Superior Court entered a judgment dismissing all of plaintiff's claims on July 20, 2020, and plaintiff filed a timely notice of appeal, seeking review of both decisions.

**Issues Presented**

The plaintiff contends that the trial justice erred in determining that the town had authority to enact the moratorium ordinance and further that, in enacting section five of the moratorium ordinance, the town was not required to adhere to the notice requirements of the Zoning Enabling Act. Additionally, plaintiff asserts that the trial justice erroneously upheld the town ordinances that prevent it from claiming that it has a vested right in its October submissions because they are more restrictive than the vesting provision contained in § 45-24-44. Finally, plaintiff asserts that the trial justice erred in (1) ruling that an application vests after a municipal officer certifies it as a complete application; and (2) ruling that plaintiff's October submissions failed to vest on their date of submission.

The plaintiff's specifications of error require this Court to consider whether plaintiff has a vested right in its October submissions, thereby allowing it to pursue its three proposed solar-field projects under the now-repealed Green ordinance; and whether the town properly suspended plaintiff's October submissions pursuant to a valid exercise of its emergency powers. This Court's conclusion regarding the status of plaintiff's October submissions will aid in our resolution of the town's authority

- 6 -

to enact the emergency moratorium. Therefore, we first address whether plaintiff has a vested right in its October submissions.

## Standard of Review

A Superior Court justice's decision to grant or deny declaratory relief under the Uniform Declaratory Judgments Act is discretionary. *Summit Insurance Company v. Stricklett*, 199 A.3d 523, 527-28 (R.I. 2019). While we defer to a trial justice's factual findings in a declaratory judgment action, we review questions of law *de novo*. *Id*. at 528. Similarly, we review a trial justice's decision to grant summary judgment *de novo*. *Waterman v. Caprio*, 983 A.2d 841, 844 (R.I. 2009). Additionally, this Court interprets an ordinance by employing the same rules of construction applicable to statutes. *Zanni v. Town of Johnston*, 224 A.3d 461, 466 (R.I. 2020). Finally, this Court reviews issues of statutory interpretation *de novo*. *Id*. at 464.

## Status of Plaintiff's October Submissions

The plaintiff argues that the town failed to recognize its vested right in building its solar-field projects. Specifically, plaintiff asserts that it has a vested right in its October submissions pursuant to the Rhode Island Zoning Enabling Act, G.L. 1956 chapter 24 of title 45, and that, therefore, the town must advance its October submissions to the master-plan review stage of the development process. We disagree.

The Rhode Island Land Development and Subdivision Review Act (Development Review Act), G.L. 1956 chapter 23 of title 45, sets forth a comprehensive legislative framework governing major land development projects throughout the state. *See* § 45-23-32(21). Major land development projects begin in the planning review phase, before local planning boards, prior to proceeding to local zoning boards. *See, e.g.*, § 45-23-39(b) ("Major plan review consists of three stages of review, master plan, preliminary plan and final plan, following the pre-application meeting(s) * * *."); § 45-23-61 (mandating that an applicant proceed before the planning board before seeking zoning board relief). While zoning ordinances provide specific regulations for the use of property located within a municipality, the Development Review Act "sets the parameters for localities' regulations governing administrative, minor, and major development applications." *West v. McDonald*, 18 A.3d 526, 536 (R.I. 2011); *see also Key v. Brown University*, 163 A.3d 1162, 1165 n.2 (R.I. 2017) ("The Rhode Island Zoning Enabling Act (the act) authorizes each city and town council 'to adopt, amend, or repeal, and to provide for the administration, interpretation, and enforcement of, a zoning ordinance.'") (quoting § 45-24-50(a)). Based on plaintiff's obligation to receive planning board approval before constructing its proposed solar-field projects, this legislative framework applies to the land development review process for the solar-field projects at issue here. *See* § 45-23-35.

Section 45-23-35(a) requires that each municipality conduct a pre-application meeting for all major land development projects. *See* § 45-23-35(a) ("One or more pre-application meetings *shall* be held for all major land development or subdivision applications.") (emphasis added). However, § 45-23-35(e) clarifies that, if a pre-application meeting is not scheduled within sixty days of a pre-application submission, "nothing shall be deemed to preclude an applicant from thereafter filing and proceeding with an application for land development or subdivision project in accordance with § 45-23-36."[4]

---

[4] General Laws 1956 § 45-23-36 governs the classification and certification of applications for land development or subdivision projects:

> "(a) *Classification*. The administrative officer shall advise the applicant as to which approvals are required and the appropriate board for hearing an application for a land development or subdivision project. The following types of applications, as defined in § 45-23-32, may be filed:

> "(1) Administrative subdivision;

> "(2) Minor subdivision or minor land development plan; and

> "(3) Major subdivision or major land development plan.

> "(b) *Certification of a complete application*. An application shall be complete for purposes of commencing the applicable time period for action when so certified by the administrative officer. Every certification of completeness required by this chapter shall be in writing. In the event the certification of the application is not made

As such, § 45-23-35(e) preconditions an applicant's advancement on an affirmative act—filing a formal application—before that applicant can advance to the next stage of land development review.

Both plaintiff and the town agree that no pre-application meeting occurred prior to December 10, 2018, when the town enacted its moratorium ordinance. Because no pre-application meeting occurred pursuant to § 45-23-35(a), plaintiff insists that its October submissions were substantially complete as of the filing date; and further that the October submissions were, in fact, applications for development

within the time specified in this chapter for the type of plan, the application is deemed complete for purposes of commencing the review period unless the application lacks information required for these applications as specified in the local regulations and the administrative officer has notified the applicant, in writing, of the deficiencies in the application.

"(c) Notwithstanding subsections (a) and (b) of this section, the planning board may subsequently require correction of any information found to be in error and submission of additional information specified in the regulations but not required by the administrative officer prior to certification, as is necessary to make an informed decision.

"(d) Where the review is postponed with the consent of the applicant, pending further information or revision of information, the time period for review is stayed and resumes when the administrative officer or the planning board determines that the required application information is complete."

that had vested under provisions of the Zoning Enabling Act. We reject this contention outright: Plaintiff's three October submissions clearly constitute pre-applications pursuant to § 45-23-35. There is unequivocal evidence in the record demonstrating that plaintiff understood that it was in the pre-application stage of this review proceeding. For example, plaintiff selected the "pre-application" box on each of its three October submissions and further included a letter of transmittal identifying the October submissions as application materials for a pre-application plan review of its project. Additionally, the town planner catalogued the October submissions as "pre-applications" upon receipt. Notwithstanding plaintiff's attempt to argue that its October submissions automatically became applications for land development upon filing, the comprehensive legislative framework of the Development Review Act compels the conclusion that the October submissions were pre-applications pursuant to § 45-23-35.

Nevertheless, plaintiff relies on § 45-24-44(a) of the Zoning Enabling Act in urging this Court to accept that its October submissions vested before December 10, 2018. Section 45-24-44(a) provides the following:

> "A zoning ordinance provides protection for the consideration of applications for development that are substantially complete and have been submitted for approval to the appropriate review agency in the city or town prior to enactment of the new zoning ordinance or amendment."

- 11 -

The plaintiff posits that it knew that the October submissions were substantially complete from prior experience with the town, and that the October submissions came within the protections of § 45-24-44(a) because they had been submitted to the appropriate review agency prior to the enactment of the moratorium ordinance or new zoning ordinance.

The plaintiff's argument is creative; however, unfortunately for plaintiff and, despite its insistence that it submitted vested applications pursuant to § 45-24-44(a) from the outset of this matter, the argument is simply not availing. Not only does it ignore the comprehensive legislative framework of the Development Review Act, but it also fails to acknowledge that § 45-24-44(a) refers to applications rather than pre-applications.

Definitions contained in the Zoning Enabling Act underscore the fact that there are distinct phases under the comprehensive legislative framework governing land development projects. For example, § 45-24-31(58) defines a pre-application conference as "[a] review meeting of a proposed development held between applicants and reviewing agencies as permitted by law and municipal ordinance, *before formal submission of an application* for a permit or for development approval." (Emphasis added.) Section 45-24-31(8) defines an application as "[t]he completed form, or forms, and all accompanying documents, exhibits, and fees required of an applicant by an approving authority for development review,

approval, or permitting purposes." These definitions further support our determination that plaintiff's October submissions constitute pre-applications pursuant to § 45-23-35, as opposed to applications for development as referenced in § 45-24-44. Based on the statutory timeline set forth in the Development Review Act and the statutory distinction between a pre-application and an application for development, plaintiff clearly failed to advance beyond the pre-application stage of the town's review.[5] We therefore conclude that plaintiff does not have a vested right in its October submissions pursuant to the Zoning Enabling Act.

**Validity of the Moratorium Ordinance**

The plaintiff additionally argues that the town lacked the authority to issue the moratorium on pending submissions pursuant to Article IV, § 411 of the Exeter Town Charter. After reviewing the town's exercise of authority pursuant to its emergency powers under the Exeter Town Charter and the challenged ordinance itself, we find plaintiff's arguments unpersuasive. Section 411 of Exeter's Town Charter provides the following:

> "(a) To meet a public emergency affecting life, health, property or the public peace, the Council may adopt one or more emergency ordinances. An emergency ordinance shall be introduced in the form and manner prescribed for

---

[5] Our determination that plaintiff's October submissions constitute pre-applications, as opposed to applications, obviates the need for this Court to determine whether the moratorium ordinance and the town's subsequent amendment to its definition of a vested application are more restrictive than the vesting language contained in G.L. 1956 § 45-24-44.

- 13 -

ordinances generally, except that it shall be plainly designated as an emergency ordinance and shall contain, after the enacting clause, a declaration stating that an emergency exists and describing it in clear and specific terms. An emergency ordinance may be adopted with or without amendment or may be rejected at the meeting at which it is introduced, without following the publication and hearing procedures set forth in Section 410, but the affirmative vote of at least three (3) members shall be required for adoption. All emergency ordinances shall be published as soon as practicable following adoption.

"(b) All emergency ordinances shall become effective upon adoption or at such later time as may be specified therein and shall automatically stand repealed as of the sixty-first day following the date on which they took effect but may be reenacted in the manner specified in this section for a period of no more than sixty days if the emergency still exists. An emergency ordinance may also be repealed by a repealing ordinance in the same manner specified in this section for adoption of emergency ordinances." Exeter Town Charter, Article IV, § 411.

The plaintiff asks us to hold that the moratorium ordinance constitutes an unlawful exercise of the town's authority because it is, in effect, an improperly adopted zoning ordinance and otherwise violates state law. We decline to do so.

As required by § 411, the town clearly categorized the moratorium ordinance as an emergency ordinance and limited its applicability to sixty days. With respect to the emergency described by the ordinance, the town states that residential areas in Exeter are under the threat of excessive development from solar-field projects such as plaintiff's. Additionally, the ordinance notes that the town needed this moratorium to allow it to carefully review the actions of the previous town council's

- 14 -

decision permitting the rapid influx of solar development projects. It also justified the imposition of this moratorium so that the town could "prevent an overburdening of [its] municipal and natural resources * * *." Finally, the moratorium ordinance responded to this emergency by imposing a moratorium on "all proceedings, applications and petitions not vested pursuant to [§] 45-24-44," the town's zoning ordinance, or the ordinance's definition of a vested application.

The trial justice found, and we agree, that the moratorium ordinance addressed a valid emergency and complies with the limitations outlined in § 411 of the town charter. The moratorium ordinance clearly characterized the emergency as a threat of an overdevelopment of solar-field projects in Exeter's residential zones. Further, the ordinance complies with the sixty-day limitation outlined in § 411 and affects only applications that have not vested under the applicable laws.

Nevertheless, plaintiff argues that the moratorium ordinance constitutes an illegal exercise of authority by the town because, it argues, the town adopted it in violation of existing state law. In support of this idea, plaintiff argues that the town did not comply with G.L. 1956 § 45-22.2-13, which authorizes a municipality to implement a "one-time moratorium, for the purpose of providing interim protection for a planned future land use or uses" for the first twelve months after a municipality adopts its local comprehensive plan. *See* § 45-22.2-13(e). However, nothing in this provision implies that the General Assembly intended for this mechanism to serve

- 15 -

as the exclusive method for a town to enact a moratorium of any length and for any purpose. We decline to read § 45-22.2-13 in a manner that would conflict with the town's authority to enact a moratorium under § 411. *See Tiernan v. Magaziner*, 270 A.3d 25, 30 (R.I. 2022) ("When faced with the task of statutory construction, this Court 'constru[es] and appl[ies] apparently inconsistent statutory provisions in such a manner so as to avoid the inconsistency.'") (quoting *Such v. State*, 950 A.2d 1150, 1156 (R.I. 2008)).

Alternatively, plaintiff asserts that section five of the moratorium ordinance violates Rhode Island law because it allegedly modified the town's vesting requirements for zoning applications, and it failed to follow the ordinary notice and hearing procedures required for a zoning amendment outlined in § 45-24-53. The plaintiff also argues that, because section five of the moratorium ordinance contains a definition of what constitutes a "vested application," the town enacted an unlawful amendment to its zoning ordinance. However, we decline to hold that the moratorium ordinance's inclusion of a vesting definition for a temporary duration constitutes an implied amendment to Exeter's zoning ordinance. While both parties correctly highlight the fact that this Court has not previously decided when municipal actions can effectively become zoning ordinances, we conclude that this valid and temporary emergency ordinance does not rise to the level of a *de facto* zoning ordinance.

- 16 -

Moreover, although section five of the moratorium ordinance contains a vesting clause, the town clearly provided this definition in an attempt to delineate which applications would proceed throughout the duration of the moratorium and which applications the town would place on hold. Section five does not attempt to discuss or define the vesting process for applications unaffected by the moratorium ordinance. We refuse to read section five in a way that would amount to a generalized regulation applying outside the context of the sixty-day emergency moratorium. Because plaintiff has failed to demonstrate that the town either lacked the authority to pass the moratorium ordinance or show that it otherwise violates Rhode Island law, we conclude that the trial justice's findings are not clearly erroneous and that his decision does not misinterpret applicable law; therefore, we affirm the trial justice's decision. *See State ex rel. Kilmartin v. Rhode Island Troopers Association*, 187 A.3d 1090, 1098 (R.I. 2018).

Based on the plaintiff's failure to demonstrate that its October submissions vested or that the town enacted an unlawful moratorium ordinance, we must uphold the decision of the trial justice. Although we must resolve all doubts and ambiguities contained in zoning laws in favor of the landowner, our understanding of the relevant law leaves us with no doubts to resolve in the plaintiff's favor. *See Denomme v. Mowry*, 557 A.2d 1229, 1231 (R.I. 1989). Therefore, we affirm the judgment of the Superior Court.

## Conclusion

Based on the foregoing, we affirm the judgment of the Superior Court and remand the record to the Superior Court.

# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903



## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Green Development, LLC a/k/a Wind Energy Development, LLC v. Town of Exeter et al. |
| **Case Number** | No. 2020-244-Appeal.<br>(WC 18-636) |
| **Date Opinion Filed** | July 28, 2023 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Melissa A. Long |
| **Source of Appeal** | Washington County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Jeffrey A. Lanphear |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Lauren E. Jones, Esq. |
| | For Defendant:<br><br>Stephen J. Sypole, Esq. |