Justice Indeglia, for the Court.
In this declaratory-judgment action, defendants Scott Alves, John Alves, and Cathy Alves (the Alveses) appeal from a Superior Court judgment in favor of the plaintiff, Summit Insurance Company (Summit). The parties had sought, as an initial matter, to clarify Summit's liability for prejudgment interest and damages above the policy limits set forth in Summit's automobile insurance contract with *524 its insured, defendant Eric Stricklett (Mr. Stricklett), pursuant to Asermely v. Allstate Insurance Company , 728 A.2d 461 (R.I. 1999), and its progeny. After a hearing on this issue, the trial justice issued a written decision, and final judgment was entered against the Alveses.[1] The parties appeared before this Court on December 5, 2018, for oral arguments after full briefing of the issues. Upon due consideration of the parties' arguments, we affirm the judgment of the Superior Court, albeit for different reasons than those set forth in the trial justice's decision.[2]
I
Facts and Travel
The pertinent facts of this case, which are largely undisputed, are as follows. On April 26, 2002, a car operated by Mr. Stricklett struck and injured Scott Alves, who was eleven years old at the time.[3] Scott suffered a fractured tibia and fibula and underwent three surgeries to repair the fractures. At the time of the incident, Mr. Stricklett's vehicle was insured by Summit under a policy with a $25,000 per person, $50,000 per accident coverage limit.[4]
In December 2002, the Alveses provided Summit with Scott's medical records. The Alveses alerted Summit that Scott was still undergoing treatment for his injuries and that medical bills from Hasbro Children's Hospital had not yet been obtained. Shortly thereafter, the Alveses sent Scott's hospital bills to Summit.[5] In March 2003, Summit informed the Alveses that it had investigated the claim and had determined that Mr. Stricklett was not at fault for Scott's injuries.[6] Summit further responded that it would "make no offers on this case." In a letter dated April 15, 2003, the Alveses' attorney responded that he disagreed with Summit's conclusion and that he and his clients were "still in the process of pursuing this claim."
No further communication occurred between the parties for nearly eight years. On February 16, 2011, a new attorney for the Alveses informed Summit by letter that the Alveses planned to proceed with a lawsuit against Mr. Stricklett.[7] The new attorney indicated that he disagreed with *525 the denial of Scott's claim, and he asked Summit to provide information regarding the policy limits in their contract with Mr. Stricklett. Summit responded on April 6, 2011, requesting that the Alveses contact the insurance company to discuss the claim.[8] In a letter dated April 8, 2011, the Alveses responded and requested that Summit provide them with a copy of the entire policy, including all endorsements, offering to forward a package of Scott's records and bills to Summit. They stated that they would "not be in a position to discuss settlement * * * until [they had] seen the entire policy."
On May 9, 2011, the Alveses sent Scott's medical records and bills to Summit. Included in the package were hospital bills totaling $59,792.66 and a bill from University Orthopedics for $20,945. In the same letter, the Alveses stated that they were still waiting to receive a copy of the insurance policy. Then, in June 2011, after being informed that Summit could not locate a copy of the insurance policy, the Alveses made a settlement demand of $300,000 to Summit. The Alveses stated that Summit was liable for the policy limit of $25,000, and they added that, because Summit had failed to previously offer its policy limits, the insurer would "undoubtedly be held liable for all interest over and above the policy limit." They also asserted that, if Summit failed to settle and the case proceeded to trial, it would be "liable for all damages over and above the policy limits in accordance with Asermely * * *." Summit responded several days later by offering its policy limits, $25,000, on behalf of Mr. Stricklett. However, the Alveses rejected this offer and filed suit against Mr. Stricklett on September 26, 2011, after the parties had exchanged several more letters but were unable to reach a settlement.
Subsequently, Summit filed a complaint for declaratory relief, naming Mr. Stricklett and the Alveses as defendants. In that action, Summit requested that the court determine "whether Summit has an obligation to pay any sums beyond its policy limits in connection with the underlying action[.]" Specifically, Summit asked the court to declare that Summit had "no duty to pay interest beyond its policy limits on any judgment in connection with the underlying action" and that it had "no duty to pay the Alves[es] anything beyond its policy limits on any judgment in connection with the underlying action[.]" The Alveses filed a counterclaim for declaratory relief solely against Summit, alleging that Summit was liable for "pre-judgment interest accrued upon all damages" from Scott's injuries and "for all damages over and above any provable policy limit * * *."[9] Mr. Stricklett submitted an answer to Summit's complaint, but he only indirectly participated in the litigation that followed.
Summit and the Alveses filed cross-motions for summary judgment in the declaratory-judgment action, which were denied after the hearing justice determined that there were genuine issues of material fact concerning what had transpired between the parties in 2003, following the Alveses' claim. In the meantime, an issue had arisen regarding whether the declaratory-judgment action should be heard and decided before the tort suit went to trial. The *526 Alveses submitted a motion requesting that the declaratory-judgment action be given priority, and the Superior Court granted that motion.[10]
At the declaratory-judgment hearing, the Alveses opened by stating that, under Asermely and its progeny, this Court had created a "duty of good faith and fair dealing" on the part of an insurance company "that runs to both * * * the first party claimant insured and also to third party claimants." The Alveses also stated that an assignment was not required to activate the duty, arguing that the facts of both Asermely and DeMarco v. Travelers Insurance Company , 26 A.3d 585 (R.I. 2011), "just so happen[ed]" to involve assignments. Specifically, the Alveses averred that certain language in our opinion in DeMarco evidenced this purported extra-contractual duty of good faith and fair dealing.[11] The Alveses noted that, despite the fact that they had not made a settlement demand within the policy limits in the eight years between 2003 and 2011, Asermely created a strict duty on the insurer to proactively engage in settlement discussions. The Alveses stated that bad faith on the part of the insurer is not a required showing, especially where the claimant's injuries were severe and the policy limits are small in comparison. Moreover, the Alveses cited to our opinion in Kolc v. Maratta , 108 R.I. 623, 278 A.2d 410 (1971), as well as G.L. 1956 § 31-14-3(a) and G.L. 1956 § 31-18-8, arguing that, because there exists a duty to anticipate that minors might dart into the road, Summit should have known that Mr. Stricklett would have been found at least partly at fault for the accident and, therefore, should have offered to settle on his behalf.
Summit responded that Asermely and DeMarco were distinguishable from the instant case in that both involved assignments of the insured's claims against the insurer and an offer from the injured party to the insurance company within the policy limits. Moreover, Summit, citing to our opinion in Auclair v. Nationwide Mutual Insurance Company , 505 A.2d 431 (R.I. 1986), argued that an assignment was specifically necessary for a third party to have standing under Asermely because "[a]ny obligation to deal with settlement offers in good faith runs only * * * to the insured." Auclair , 505 A.2d at 431. Summit similarly distinguished Skaling v. Aetna Insurance Co. , 742 A.2d 282 (R.I. 1999) ( Skaling I ), and Skaling v. Aetna Insurance Company , 799 A.2d 997 (R.I. 2002) ( Skaling II ), on the basis that those cases involved first-party claims brought by an insured against an insurer, where the insurance company clearly owed a duty to the plaintiff-insured. Summit then averred that its investigation of the claim, which consisted of a review of the police report, was adequate for purposes of fulfilling any duty it might have had to investigate the Alveses' claim in good faith.
One year later, the trial justice issued a written decision granting judgment in favor of Summit. In that decision, the trial justice first interpreted Summit's insurance policy and determined that the interest provision in that policy did not require that Summit pay interest in excess of the policy limit and that this contract provision *527 did not violate Rhode Island law. Next, the trial justice interpreted the rejected settlement offer statute, G.L. 1956 § 27-7-2.2,[12] and decided that the statute did not apply in this case because the Alveses had never made an offer to Summit at or around the policy limits. He then declined to rule on whether the prejudgment interest statute, G.L. 1956 § 9-21-10,[13] was applicable in this case, stating that it would have been premature to decide this issue.
The trial justice then addressed what he characterized as the main issue in the case: Whether Summit owed a duty to its insured, to the Alveses, or to others. First, the trial justice found that there was no evidence to show that Summit failed to properly investigate the Alveses' claim, failed to engage in settlement discussions, or unreasonably denied their claim. The trial justice cited to Summit's investigation of the police report of the accident in finding that there was no bad faith on Summit's part in denying the Alveses' claim. He also found that this Court's opinion in Asermely was distinguishable from the present case in several respects. The trial justice pointed out that, because the Alveses were neither Summit's insureds nor assignees of the rights of Summit's insureds, they were owed no duty under Asermely . Next, the trial justice emphasized that an insurer owes its insured "unique rights belonging only to insureds." He observed that insurance companies also owe a duty to their shareholders to pay claims reasonably and to avoid paying fraudulent claims.
In a ruling that would seem to contradict his previous analysis, the trial justice concluded that "Summit does owe a duty to the Alves[es] to act in a reasonable manner and in good faith in settling the claim against Mr. Stricklett." He went on to state that Summit had fulfilled this duty and had acted appropriately under the circumstances. The trial justice declared that Summit is "not required to pay all prejudgment interest that has accrued on the action."
Final judgment entered against the Alveses on March 13, 2017; and, on March 17, 2017, they timely appealed to this Court.
II
Standard of Review
"It is well settled that '[t]he decision to grant or to deny declaratory relief under the Uniform Declaratory Judgments *528 Act is purely discretionary.' " State ex rel. Kilmartin v. Rhode Island Troopers Association , 187 A.3d 1090, 1098 (R.I. 2018) (quoting Sullivan v. Chafee , 703 A.2d 748, 751 (R.I. 1997) ). "We accord great deference to the factual findings of a trial justice sitting without a jury in a declaratory judgment action." Id. "However, questions of law are reviewed de novo ." Id. "Accordingly[,] we review a declaratory decree of the Superior Court with an eye to whether the court abused its discretion, misinterpreted the applicable law, overlooked material facts, or otherwise exceeded its authority." Id. (quoting Sullivan , 703 A.2d at 751 ).
III
Discussion
In their papers submitted to this Court on appeal, the Alveses aver that the duty of an insurer to affirmatively settle an insurance claim on behalf of its insured, which we established in Asermely and further clarified in its progeny cases, Skaling I , Skaling II , and DeMarco , applies with equal force to third-party claimants in the form of a duty of good faith and fair dealing. Specifically, the Alveses claim that "[w]hen read together Asermely , Skaling II , and DeMarco instruct that a duty of good faith and fair dealing runs from the insurer to the third-party claimant regardless of whether there has been an assignment of the insured's rights." Contrary to this contention, however, this Court has never recognized such a duty and has never held that an insurer has extracontractual liability to a third-party claimant in addition to a contractual, fiduciary duty to its insured for failing to settle a claim in a timely manner where § 27-7-2.2 was not applicable. Because of the somewhat contradictory holding in the decision below and the misconceptions that the Alveses seem to have regarding our precedent, we find it necessary to clarify these opinions in the instant case.
We begin our discussion with Asermely , the first in the line of relevant opinions. In that case, the plaintiff was involved in an automobile accident with a vehicle insured by Allstate Insurance Company under a policy with a $50,000 limit. Asermely , 728 A.2d at 462. After the plaintiff filed suit, the parties were referred to arbitration, after which the arbitrator issued an award in favor of the plaintiff totaling $47,557.37. Id. Although the plaintiff accepted this award, Allstate decided to take its chances at trial and promptly rejected the result of arbitration. Id. After trial, a verdict entered for the plaintiff in the amount of $86,333.57, including interest, which was well above both the policy limit and the arbitrator's award. Id. Subsequent to the entry of judgment, Allstate attempted to tender the full policy limit by issuing a check for $50,000, noting that the check was in "final settlement" of the entire claim. Id. at 462-63. After the plaintiff refused to endorse this offer, Allstate sent another check for the same amount, this time without the limiting language, and the plaintiff accepted. Id. at 463.
The plaintiff in Asermely , having received an assignment of the insured's claims against Allstate, brought an action directly against Allstate, alleging, inter alia , that Allstate had "disregarded its duty to its insured in bad faith." Asermely , 728 A.2d at 464. The Superior Court eventually granted summary judgment in favor of Allstate on that count. Id. On appeal, we reversed the grant of summary judgment and took the "opportunity to promulgate a new rule to guide the trial courts in deciding these issues." Id. We stated: "This Court has held that an insurance company has a fiduciary obligation to act in the 'best interests of its insured in order to protect the insured from excess liability * * *
*529 [and to] refrain from acts that demonstrate greater concern for the insurer's monetary interest than the financial risk attendant to the insured's situation." Id. (quoting Medical Malpractice Joint Underwriting Association of Rhode Island v. Rhode Island Insurers' Insolvency Fund , 703 A.2d 1097, 1102 (R.I. 1997) ). We further explained this standard, stating that:
"[I]f it has been afforded reasonable notice and if a plaintiff has made a reasonable written offer to a defendant's insurer to settle within the policy limits, the insurer is obligated to seriously consider such an offer . If the insurer declines to settle the case within the policy limits, it does so at its peril in the event that a trial results in a judgment that exceeds the policy limits, including interest." Id. (emphasis added).
We clarified that "[t]his fiduciary obligation extends not only to the insurance company's own insured, but also, as in this case, to a party to whom the insureds have assigned their rights ."[14] Id. (emphasis added).
Unlike Asermely , Skaling I and Skaling II involved a first-party claim brought by an insured directly against its insurer for the refusal to pay underinsured motorist (UIM) benefits pursuant to the insurance contract involved in those cases. See Skaling II , 799 A.2d at 1001 ; Skaling I , 742 A.2d at 286. There, the plaintiff-insured was severely injured in the aftermath of a drunken escapade, when he attempted to rescue an individual who had fallen off a narrow wooden railroad trestle bridge upon which the vehicle, in which the individual had been a passenger, was parked. Skaling I , 742 A.2d at 286. The driver of the vehicle had gone to the plaintiff's house for help and the plaintiff went to the scene; he fell to the ground below after trying to navigate around the vehicle on the bridge during an attempt to find the individual. Id. After the plaintiff brought a claim against the driver's insurance company, the driver's insurer paid the plaintiff $25,000, the full policy limit, in settlement of that claim. Id. The plaintiff then sought compensation from his insurer, Aetna, pursuant to an uninsured or underinsured (UM-UIM) provision in his own insurance policy. Id. However, Aetna denied this request outright because it believed that the injuries "did not arise from [the driver's] ownership, maintenance, or use of his Jeep * * *." Id.
The plaintiff "then filed a complaint in Superior Court seeking a declaration that he was entitled to compensation from Aetna under the UM provision of his insurance policy,[] and also seeking damages for Aetna's alleged breach of his insurance contract." Skaling I , 742 A.2d at 286. After trial, a verdict totaling $1,174,500 was rendered against Aetna; however, final judgment was entered in the amount of $300,000, the policy limit, after the trial justice denied the plaintiff's motion for the addition of prejudgment interest pursuant to § 9-21-10 and § 27-7-2.2. Id. at 286, 287. The plaintiff appealed this denial. On appeal, we held that Aetna was liable for all prejudgment interest pursuant to § 9-21-10, because Aetna had breached its duty to the plaintiff-insured "by refusing to cover the damages within the contractual limits." Id. at 292.
*530 After our opinion in Skaling I , Aetna moved for summary judgment in the Superior Court on an outstanding claim alleging insurer bad faith, arguing "that [the plaintiff's] claim against the underinsured tortfeasor was a fairly debatable claim, thereby relieving Aetna of any liability for insurer bad faith."[15] Skaling II , 799 A.2d at 1001. The hearing justice granted that motion, and the plaintiff appealed to this Court once again. Id. at 1002. On appeal, we vacated the decision of the hearing justice. Id. at 1000-01. We began our discussion by noting the differences between claims for insurer bad faith in the first-party and third-party contexts, stating:
"In recent years, this Court has had occasion to address the refusal or negligent failure of an insurance company to make a timely offer of settlement in the context of both third-party claims, in which the insurer is obligated to defend its insured against liability to third-parties , Asermely * * * and in first-party claims, where the insured has made a claim against its own carrier for compensation arising out of injuries received from a UM-UIM driver." Id. at 1005 (emphasis added).
We highlighted the fact "that the duty of good faith and fair dealing includes an affirmative duty to engage in timely and meaningful settlement negotiations and to make and consider offers of settlement consistent with an insurer's fiduciary duty to protect its insured from excess liability" in both kinds of cases. Id. at 1005, 1006 (emphasis added).
However, this Court was called upon to reconcile this standard with an insurance company's ability to deny a claim that may be "fairly debatable[.]" Skaling II , 799 A.2d at 1006. We held:
"Although we decline to abandon the fairly debatable standard and recognize that an insurer is entitled to debate a claim that is fairly debatable, we are not persuaded that an insurer is relieved of its obligations to deal with its insured consistent with its implied in law obligations of good faith and fair dealing simply because the claim is fairly debatable. Accordingly, an intentional failure on the part of the insurer to determine whether there is a lawful basis to deny the claim, standing alone, is bad faith. This can be established by proof that the insurer 'either intentionally or recklessly failed to properly investigate the claim or to subject the results of the investigation to a cognitive evaluation and review.' " Id. at 1011 (quoting Thomas v. Principal Financial Group , 566 So.2d 735, 744 (Ala. 1990) ).
In conclusion, we reiterated that "the obligations imposed on insurers doing business in Rhode Island have never changed-'an insurance company has a fiduciary obligation to act in the best interests of its insured,' and not its own pecuniary interest at all times." Skaling II , 799 A.2d at 1012 (quoting Bolton v. Quincy Mutual Fire Insurance Co. , 730 A.2d 1079, 1081 (R.I. 1999) ).
Finally, in the DeMarco case, we were called upon to decide whether the Asermely rule should be expanded to situations with multiple third-party claimants. DeMarco , 26 A.3d at 605. In that case, an automobile crash led to multiple injuries and resulted in multiple claims against the driver who had caused the crash. Id. at 587. There, the plaintiff made a claim for the full policy limit of $1 million against the driver's insurer, Travelers, which claim *531 Travelers promptly denied, stating that it could not exhaust the full policy limit on the plaintiff's claim. Id. at 588, 589. The plaintiff then commenced a personal injury action against Travelers' insured. Id. at 589-90. Subsequently, Travelers offered, shortly before trial, to split the policy limits between the claimants. Id. at 591. The plaintiff rejected the offer and proceeded to trial for the full amount of his damages. Id. at 595. After trial, a verdict was rendered in favor of the plaintiff for a total judgment amount of $2,801,939.07-including prejudgment interest-almost three times the policy limit. Id.
Subsequent to the entry of judgment, the plaintiff had executed a general release in favor of the insured in exchange for $550,000 from Travelers and an assignment of the insured's bad faith claim against Travelers. DeMarco , 26 A.3d at 599, 600. The plaintiff-assignee brought suit, and the motion justice granted summary judgment in the plaintiff's favor on the two declaratory-judgment counts. Id. at 601, 602. Travelers appealed, advancing two arguments in favor of reversing the grant of summary judgment: (1) the Asermely rule should not apply in the multiple-claimant context; and (2) the general release extinguished any and all claims that the insured had against Travelers, thus rendering the assignment of claims to the plaintiffs meaningless. Id. at 604.
After considering the policy implications of imposing extended liability in cases with multiple third-party claimants, we dealt with Travelers' first contention, holding that:
"[W]hen an insurer is faced with multiple claimants with claims that in the aggregate exceed the policy limits, the insurer has a fiduciary duty to engage in timely and meaningful settlement negotiations in a purposeful attempt to bring about settlement of as many claims as is possible, such that the insurer will thereby relieve its insured of as much of the insured's potential liability as is reasonably possible given the policy limits and the surrounding circumstances." DeMarco , 26 A.3d at 613-14 (emphasis added).
We provided further guidance in the form of specific circumstances that courts should look to in the future when deciding whether an insurer had acted in bad faith in refusing to settle with multiple claimants. Id. at 614. Although this Court agreed that Asermely did apply in the multiple-claimant context, we nonetheless remanded the case on this issue for a determination by the trier of fact. Id. at 614, 615.
Regarding Travelers' second contention, we examined both in-state and out-of-state precedent in deciding whether a release of claims by a plaintiff in favor of an insured extinguished any cause of action that the insured might have against the insurer. DeMarco , 26 A.3d at 620-24. This Court stated that, although the parties had not chosen "the ideal form" of release documents in that case, we would follow those jurisdictions that allowed an assignee to bring a claim against an insurer, even after the insured had been absolved through the execution of a release. Id. at 623-24. We then looked to the intention of the parties in all the contemporaneous documents at issue in DeMarco , holding that "[i]t is clear * * * that the contracting parties sought to make it possible for [the plaintiff] to pursue claims against Travelers, including claims under Asermely and for bad faith ." Id. at 624 (emphasis added). Furthermore, we decided that the risk of collusion between the plaintiff and the insured "was sufficiently low in the case at bar that upholding the validity of the assignment does not contravene public policy." Id. at 628.
*532 In their papers to this Court, the Alveses rely primarily on certain wording from our opinion in DeMarco to advance their contention that third parties may bring a claim, under Asermely , directly against an insurer, without an assignment: "Although Skaling II involved the first-party claim of an insured against an insurer rather than a third-party claim as was at issue in Asermely , we indicated that both cases implicated similar policy concerns * * *." DeMarco , 26 A.3d at 608. However, these words should be read in the context of the entire sentence, where the Court went on to emphasize that "even if a claim against an insured is fairly debatable, an insurer 'is nonetheless obliged to engage in settlement discussions in an effort to relieve the insured from the burden and expense of litigation .' " Id. at 608-09 (emphasis added) (quoting Skaling II , 799 A.2d at 1011 ).
Here, Asermely clearly does not apply to the Alveses' case, given that no offer within the policy limits was ever made by the Alveses to Summit. See Asermely , 728 A.2d at 464 ("[I]f a plaintiff has made a reasonable written offer to a defendant's insurer to settle within the policy limits, the insurer is obligated to seriously consider such an offer."). It should also be abundantly clear from the opinions outlined above that, although the context may change-from third-party claims "in which the insurer is obligated to defend its insured against liability to third-parties," to "first-party claims, where the insured has made a claim against its own carrier for compensation arising out of injuries received from a UM-UIM driver"-the insurance company's duty to its insured in the underlying settlement discussions remains constant. Skaling II , 799 A.2d at 1005 ; see also DeMarco , 26 A.3d at 613-14 ; Skaling I , 742 A.2d at 292 ; Asermely , 728 A.2d at 464. While we had cause in DeMarco to expand this duty in cases involving multiple third-party claimants and where a general release of claims against the insured was negotiated between the plaintiff and the insured, we have never allowed a third party to bring a claim under Asermely without an assignment from the insured.[16] See DeMarco , 26 A.3d at 614, 625 ; see also DeMarco , 26 A.3d at 632 (Flaherty, J. dissenting) ("It is beyond dispute that Travelers owed no duty to DeMarco, a stranger to the insurance contract; and in making any claim against the carrier, DeMarco must stand in the shoes of [the insured].").
As this Court held in Auclair , the relationship between an insurer and a third party is adversarial, "giving rise to no fiduciary obligation on the part of such insurance carrier to the claimant." Auclair , 505 A.2d at 431. Accordingly, "there is no duty on the part of an insurance carrier for a third party to settle promptly with a claimant." Id. Therefore, far from aligning with the Alveses' contentions, our precedent dictates that "[a]ny obligation to deal with settlement offers in good faith runs only to the insured," id. , or, as in Asermely and DeMarco , "to a party to whom the insureds have assigned their rights." Asermely , 728 A.2d at 464 ; see DeMarco , 26 A.3d at 624. We had the opportunity to reaffirm our holding in Auclair in both Cianci v. Nationwide Insurance Company , 659 A.2d 662 (R.I. 1995), and Canavan v. Lovett, Schefrin and Harnett , 745 A.2d 173 (R.I. 2000), the second of which we handed down after our opinions in Asermely and Skaling I. Canavan , 745 A.2d at 174-75 ; Cianci , 659 A.2d at 667. Moreover, as we have discussed, nothing in our opinions in Asermely , Skaling I , Skaling II , or DeMarco can be construed as overruling that precedent.
*533 Therefore, because we hold that Summit owed no duty to the Alveses, we determine that the trial justice's conclusion that "Summit does owe a duty to the Alves[es] to act in a reasonable manner and in good faith in settling the claim against Mr. Stricklett" and "that Summit fulfilled this duty and acted appropriately" was not correct. We believe that this kind of duty on the part of the insurance company to third parties would expand an insurance company's potential liability under Asermely too far and essentially announce a new, judicially-created cause of action.
Having held that Summit owed no duty to the Alveses, we need not address their contentions that the trial justice erred in finding that Summit had fulfilled its duty in investigating the claim or that he erred in declining to decide the applicability of the prejudgment interest statute, § 9-21-10, and the Skaling I rule regarding prejudgment interest. Additionally, because Mr. Stricklett was not made part of the final judgment in this case, Summit's liability to Mr. Stricklett, under Asermely or otherwise, may be determined if Mr. Stricklett is found liable to the Alveses in an amount exceeding the policy limit in the underlying tort action. This is all in keeping with our "usual policy of not opining with respect to issues about which we need not opine[.]" Grady v. Narragansett Electric Company , 962 A.2d 34, 42 n.4 (R.I. 2009).
IV
Conclusion
For the reasons stated herein, we affirm the judgment of the Superior Court and remand the papers to that tribunal.

Mr. Stricklett was not part of the final judgment and has made no appeal to this Court.

In so doing, we follow "our precedent of affirm[ing] the orders and judgments of a trial court when * * * there are other valid reasons to support the order or judgment appealed from." McGovern v. Bank of America, N.A. , 91 A.3d 853, 861 (R.I. 2014) (quoting Levine v. Bess Eaton Donut Flour Co., Inc. , 705 A.2d 980, 984 (R.I. 1998) ).

Because there are multiple defendants named "Alves," for ease of reference Scott Alves will be referred to herein by his first name. No disrespect is intended.

Summit indicated that the policy was underwritten and issued by the Rhode Island Automobile Insurance Plan and assigned to Summit. Upon the Alveses' request, Summit could not locate Mr. Stricklett's insurance contract, but indicated that these were the policy limits of the contract.

As of January 2003, Scott's medical bills totaled approximately $45,000.

According to a witness named Justin Souza, Scott was sitting on the handlebars of Souza's bicycle as they were heading north on the sidewalk adjoining Newport Avenue in Pawtucket, Rhode Island. Souza told police that Scott jumped off the bicycle and ran across Newport Avenue without looking. According to the police report, three additional witnesses confirmed that Scott ran across the street without looking.

The letter also indicated that Scott would be twenty-one years old on September 27, 2011-when the statute of limitations, which had tolled due to Scott's infancy, would have run.

Summit was then known as NLC Insurance Companies. For ease of reference, the insurer will continue to be referred to herein as Summit.

The Alveses also claimed that Summit should be estopped from asserting that the insurance policy had a liability limit of $25,000 because Summit had not produced the policy. Summit indicated that, although it could not locate the original policy, it had information regarding the terms of the policy and its limits. However, the Alveses did not pursue this argument on appeal.

The attorney who represented Mr. Stricklett in the personal injury action also argued in favor of the motion to have the declaratory-judgment action resolved first.

Although Skaling v. Aetna Insurance Company , 799 A.2d 997 (R.I. 2002), "involved the first party claim of an insured against an insurer rather than a third-party claim as was at issue in Asermely , we indicated that both cases implicated similar policy concerns[.]" DeMarco v. Travelers Insurance Company , 26 A.3d 585, 608 (R.I. 2011).

General Laws 1956 § 27-7-2.2 states:
"In any civil action in which the defendant is covered by liability insurance and in which the plaintiff makes a written offer to the defendant's insurer to settle the action in an amount equal to or less than the coverage limits on the liability policy in force at the time the action accrues, and the offer is rejected by the defendant's insurer, then the defendant's insurer shall be liable for all interest due on the judgment entered by the court even if the payment of the judgment and interest totals a sum in excess of the policy coverage limitation. This written offer shall be presumed to have been rejected if the insurer does not respond in writing within a period of thirty (30) days."

General Laws 1956 § 9-21-10(a) states:
"In any civil action in which a verdict is rendered or a decision made for pecuniary damages, there shall be added by the clerk of the court to the amount of damages interest at the rate of twelve percent (12%) per annum thereon from the date the cause of action accrued, which shall be included in the judgment entered therein. Post-judgment interest shall be calculated at the rate of twelve percent (12%) per annum and accrue on both the principal amount of the judgment and the prejudgment interest entered therein. This section shall not apply until entry of judgment or to any contractual obligation where interest is already provided."

In Asermely v. Allstate Insurance Company , 728 A.2d 461 (R.I. 1999), the plaintiff herself did not benefit from this new rule because we held that the claim was debatable as a matter of law, and we upheld the trial justice's grant of summary judgment on the count alleging insurer bad faith. Asermely , 728 A.2d at 464. As we have said: "If the claim is 'fairly debatable,' there can be no liability in tort." Id. (quoting Rumford Property and Liability v. Carbone , 590 A.2d 398, 400 (R.I. 1991) ).

We require a plaintiff alleging insurer bad faith to sever this claim from a claim for breach of contract. Skaling II , 799 A.2d at 1002 ; see Bartlett v. John Hancock Mutual Life Insurance Co. , 538 A.2d 997, 1001 (R.I. 1988).

By their own admission in their papers submitted to this Court, the Alveses have not received any assignment from Mr. Stricklett at this time.