# United States Court of Appeals
## For the First Circuit

No. 19-1719

ALTHEA JOHNSON, individually and as Heir and Natural Guardian of
Carlton Johnson; CARLTON JOHNSON,

Plaintiffs, Appellants,

v.

HORACE JOHNSON; STATE ROAD AUTO SALES, INC.;
ARBELLA MUTUAL INSURANCE COMPANY,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. John J. McConnell, Jr., U.S. District Judge]

Before

Thompson, Stahl, and Barron,
Circuit Judges.

Ronald J. Resmini, with whom Law Offices of Ronald J. Resmini,
Ltd. was on brief, for appellants.
Thomas A. Pursley, with whom Stephen E. Navega, II and Lynch
& Lynch were on brief, for appellee Arbella Mutual Insurance.
Lisa De Mari, with whom Heffernan & De Mari, P.C. was on
brief, for appellees Horace Johnson and State Road Auto Sales.

March 13, 2020

**Per Curiam**. A car accident involving Horace Johnson ("Horace"), who was the driver, and Horace's cousin, Carlton Johnson ("Carlton"), who was the sole passenger, is what led to this lawsuit, which was filed through Carlton's mother to recover damages for serious injuries Carlton sustained in the accident.[1] Deciding the appeal now before us will require us to resolve whether a settlement contract under Rhode Island law was formed and the potential applicability of a Rhode Island statute. These determinations rest on an important question of state law -- one which the Rhode Island Supreme Court has not yet had occasion to answer.

So, "[b]ecause the Rhode Island Supreme Court is the ultimate arbiter of matters of Rhode Island law, we certify th[is] unsettled question[] to that court for guidance." W. Reserve Life Assur. Co. of Ohio v. ADM Assocs., LLC, 737 F.3d 135, 136 (1st Cir. 2013), certified question answered, 116 A.3d 794 (R.I. 2015); R.I. Sup. Ct. R. 6.[2]

---

[1] We note that Carlton's mother, Althea, sought to recover damages in her individual capacity via loss of consortium and intentional infliction of emotional distress claims, but the dismissal of those claims is not challenged on appeal.

[2] Rule 6(c) of the Rhode Island Supreme Court Rules of Appellate Procedure requires that the certifying court "set forth (1) the questions of law to be answered; and (2) a statement of all facts relevant to the questions certified and showing fully the nature of the controversy in which the questions arose."

## I. Background

On December 17, 2017, Horace, a Massachusetts resident, was driving in Providence, Rhode Island with Carlton, a Rhode Island resident then 28 years old, as Horace's passenger. The car struck a utility pole, and both Horace and Carlton were seriously injured. Horace was driving a car leased to him by State Road Auto Sales ("State Road"), and he was insured by Arbella Mutual Insurance Company ("Arbella") under an automobile insurance policy that provided a limit of $100,000 of bodily injury coverage for guest occupants injured in accidents outside Massachusetts.[3]

Just over a month after the accident (January 25, 2018), Carlton's counsel sent a letter to Arbella demanding a settlement for his bodily injury claims at the $100,000 policy limit. In a letter dated February 28, 2018, Arbella sent a response to Carlton's counsel in which Arbella accepted Carlton's demand to settle for the policy limits of $100,000.

Soon after, on March 6, 2018, Carlton and his mother filed a lawsuit in the Superior Court of Rhode Island against the appellees. Arbella removed the case to federal court. See 28 U.S.C. §§ 1332, 1441. In time, the appellees moved for summary judgment, and the district court granted it. In so doing (as is relevant to our question-certification), the district court

---

[3] We will sometimes refer to Horace, Arbella, and State Road collectively as "the appellees."

rejected Carlton's argument that Rhode Island's Rejected Settlement Offer Interest Statute, R.I.G.L. § 27-7-2.2, applied to the case and operated to render Arbella's acceptance of the settlement offer invalid because it occurred more than the statutorily prescribed thirty days after his settlement offer (under the statute, the "written offer shall be presumed to have been rejected if the insurer does not respond in writing within a period of thirty (30) days"). Rather, after careful consideration, the district court determined that the statute's "[i]n any civil action" language requires that a legal proceeding in court needs to be underway to trigger the statute's application. Accordingly, the district court concluded that since Carlton did not file suit until after the settlement-offer-and-acceptance episode, the statute did not apply, and the parties had otherwise entered into a valid settlement contract for policy limits, meaning Carlton's claims for bodily injury could not be brought in court.

Carlton timely appealed the dismissal of two counts in his complaint, each of which rests on the premise that no valid settlement contract was formed: Count I seeks damages for Carlton's "severe personal injuries, which continue to date" causing "significant hospitalization, medical treatment, home health care, rehabilitation, lost wages, loss of consortium, permanent injuries, as well as loss of earning capacity"; and Count III claims that the appellees disregarded Rhode Island insurance

settlement law and violated and breached Massachusetts insurance settlement law.

## II. The Issues

Much of the appeal now before us rests on the applicability of § 27-7-2.2. Let's break that down, starting with the full language of the statute:

> In any civil action in which the defendant is covered by liability insurance and in which the plaintiff makes a written offer to the defendant's insurer to settle the action in an amount equal to or less than the coverage limits on the liability policy in force at the time the action accrues, and the offer is rejected by the defendant's insurer, then the defendant's insurer shall be liable for all interest due on the judgment entered by the court even if the payment of the judgment and interest totals a sum in excess of the policy coverage limitation. This written offer shall be presumed to have been rejected if the insurer does not respond in writing within a period of thirty (30) days.

Before us, Carlton rehashes his argument below in insisting that, contrary to the district court's conclusion, the parties never entered into a valid settlement contract: § 27-7-2.2 applies, and it renders the settlement contract unenforceable because Arbella failed to accept his settlement offer within the thirty-day window the statute lays out. To his thinking, the statute applies even though he hadn't filed a complaint yet because "'any civil action' means from the time a torts or contracts-based cause of action begins to accrue" (he did not propose this definition before the district court). Further, he says that the Rhode Island Supreme Court's jurisprudence has assumed

applicability of the statute to matters like his, i.e. fact patterns involving a pre-suit settlement offer, followed by an insurer's failure to respond in writing within the thirty-day window. See, e.g., Summit Ins. Co. v. Stricklett, 199 A.3d 523 (R.I. 2019); DeMarco v. Travelers Ins. Co., 26 A.3d 585 (R.I. 2011).

The appellees respond by arguing that the district court was correct to conclude that the statute is inapplicable: it requires a civil action be underway, and because no lawsuit had been filed at the time the parties' settlement correspondence was playing out, Arbella simply was not bound by the statute's thirty-day deadline. To the appellees, this means the offer and Arbella's acceptance were valid under Rhode Island law, and the enforceable settlement agreement that resulted categorically bars Carlton from pursuing his claims in court.

Clearly, whether Carlton's case can succeed hinges on whether § 27-7-2.2 applies to his case. In order to perform that analysis, however, we need to pin down the meaning of "[i]n any civil action" as it appears in § 27-7-2.2. The Rhode Island Supreme Court has not yet provided a definition of "civil action" as it relates to the statute, but it is precisely this definition that will determine whether the statute applies to Carlton's case. And while we are aware of the considerations and tools at our disposal to decide upon a definition for ourselves, we think it

more prudent to afford the Rhode Island Supreme Court the opportunity to lay out its controlling take on this matter of state law. This is particularly so because of Rhode Island case law that involves § 27-7-2.2 in cases that also had their genesis in pre-suit settlement negotiations. See, e.g., Stricklett, 199 A.3d at 527, 533; DeMarco, 26 A.3d at 617.

## III.  Certification

In light of the foregoing, we certify to the Rhode Island Supreme Court the following question:

(1)  What is the definition of "civil action" in R.I.G.L. § 27-7-2.2?

We would welcome further guidance from the Rhode Island Supreme Court on any other relevant aspect of Rhode Island law that it believes would aid in the proper resolution of the issues pending in this matter.

The clerk of this Court is directed to forward to the Rhode Island Supreme Court, under the official seal of this Court, a copy of the certified question, this opinion, the district court's opinion, and the merits briefs and appendices filed by the parties. We retain jurisdiction over this issue pending resolution of this certified question.