# United States Court of Appeals
## For the First Circuit

No. 19-1719

ALTHEA JOHNSON, individually and as Heir and Natural Guardian of
Carlton Johnson; CARLTON JOHNSON,

Plaintiffs, Appellants,

v.

HORACE JOHNSON; STATE ROAD AUTO SALES, INC.;
ARBELLA MUTUAL INSURANCE COMPANY,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. John J. McConnell, Jr., U.S. District Judge]

Before

Thompson, Stahl,[*] and Barron,
Circuit Judges.

Ronald J. Resmini, with whom Law Offices of Ronald J. Resmini,
Ltd. was on brief, for appellants.

Thomas A. Pursley, with whom Stephen E. Navega, II and Lynch
& Lynch were on brief, for appellee Arbella Mutual Insurance.

Lisa De Mari, with whom Heffernan & De Mari, P.C. was on

---

[*] While this case was argued to a panel that included Judge
Stahl, he did not participate in the issuance of this opinion. The
remaining two panelists therefore issued this opinion pursuant to
28 U.S.C. § 46(d).

brief, for appellees Horace Johnson and State Road Auto Sales.

—————————

January 19, 2022

—————————

**THOMPSON**, <u>Circuit Judge</u>.  This case has its genesis in a car accident involving Horace Johnson ("Horace"), the driver, and Horace's cousin, Carlton Johnson ("Carlton"), the sole passenger in the car Horace was driving.[1]  A lawsuit against Horace, his insurer, and the company from which Horace had leased the vehicle followed;[2] Carlton and Carlton's mother, individually and on Carlton's behalf, sued to recover damages for the serious injuries Carlton sustained in the accident.[3]  The United States District Court for the District of Rhode Island granted summary judgment on all claims, and Carlton appealed.  The case was briefed and argued to us in due course on February 4, 2020.  As we'll explain in more detail in the pages to come, a critical component of one of the appellate issues concerned an important and unsettled matter of Rhode Island law, so on March 13, 2020, we certified a question to the Rhode Island Supreme Court pursuant to Rule 6 of Rhode Island's Rules of Appellate Procedure.  <u>See</u> <u>Johnson</u> v. <u>Johnson</u>, 952 F.3d 376, 377 (1st Cir. 2020), <u>certified question</u>

---

[1] For clarity, we use the parties' first names throughout our opinion; as always, we mean no disrespect.

[2] The case began in the Rhode Island state court system, but the defendants (appellees here) removed it to federal court pursuant to 28 U.S.C. §§ 1332, 1441.

[3] Carlton's mother, Althea (who is referred to in this record as both "Althea" and "Altima"), sought to recover damages in her individual capacity via loss of consortium and intentional infliction of emotional distress claims.  Those claims were dismissed below, but their dismissal is not challenged on appeal.  In today's opinion, for the sake of simplicity, we refer to appellants collectively as "Carlton."

<u>answered</u>, No. 2020-105-M.P., 2021 WL 5996413 (R.I. Dec. 20, 2021).

On December 20, 2021, the Rhode Island Supreme Court supplied its

answer. See <u>Johnson</u>, 2021 WL 5996413, at *5. Equipped with that,

we are now in a position to render our opinion on Carlton's appeal.

In doing so, we'll follow our customary route of laying

out the relevant facts of the case (reproduced here based in large

part on our Certification Order), explaining what happened below,

then tackling the arguments advanced on appeal. Here's the

spoiler, though: This will be an affirmance across the board.

**FACTS AND TRAVEL**

The facts in this case are not contested; regardless, we

always recount them in the light most favorable to the nonmovant

(here, that's Carlton), and we will "resolv[e] all reasonable

inferences in his favor, consistent with record support."[4] <u>Brader</u>

v. <u>Biogen Inc.</u>, 983 F.3d 39, 44 (1st Cir. 2020).

On December 17, 2017, Horace, a Massachusetts resident,

was driving in Providence, Rhode Island with Carlton, a Rhode

Island resident who was then 28 years old, as Horace's passenger.

The car struck a utility pole, and both Horace and Carlton were

---

[4] We pause to observe what, exactly, the scope of the record actually is here. On appeal, Carlton submitted and refers to materials that were not part of the summary-judgment record below. We look only to the record as it appeared before the district court. See, e.g., <u>CMI Cap. Mkt. Inv., LLC</u> v. <u>Gonzalez-Toro</u>, 520 F.3d 58, 61 (1st Cir. 2008) (explaining that "on appeal from summary judgment, we consider the same record that was before the district court").

seriously injured.  Horace was driving a car leased to him by State Road Auto Sales ("State Road"), and he was insured by Arbella Mutual Insurance Company ("Arbella") under an automobile insurance policy that provided a limit of $100,000 of bodily injury coverage for guest occupants injured in accidents outside Massachusetts.[5]

On January 25, 2018, just over a month after the December car accident, Carlton's counsel sent an "Asermely Demand" letter to Arbella demanding a settlement for his bodily injury claims at the $100,000 policy limit.  In the demand letter, Carlton cited Rhode Island's Rejected Settlement Offer Interest Statute, R.I. Gen. Laws §§ 27-7-2.1 & 27-7-2.2, as well as Asermely v. Allstate Ins. Co., 728 A.2d 461 (R.I. 1999), and DeMarco v. Travelers Ins. Co., 26 A.3d 585 (R.I. 2011), and he indicated he would accept the policy limit (assuming it was indeed the maximum insurance available under Carlton's coverage).  Arbella investigated, then, in a letter dated February 28, 2018, more than thirty days later, Arbella sent a response to Carlton's counsel in which Arbella accepted Carlton's demand to settle for the policy limits of $100,000.

Very soon after that, though, on March 6, 2018, Carlton and his mother filed a complaint (initially in Rhode Island state court, as previously mentioned) in which they alleged three counts,

---

[5] We will sometimes refer to Horace, Arbella, and State Road collectively as "the appellees," when appropriate.

two of which are pertinent to this appeal:[6]  Count I pointed to the negligence of the appellees and sought damages for Carlton's "severe personal injuries," which required hospitalization, medical treatment, home health care, rehab, lost wages, loss of consortium, permanent injuries, and loss of earning capacity; and Count III alleged that Arbella disregarded Rhode Island insurance settlement law, and that it violated and breached various aspects of Massachusetts insurance settlement law, too.

In time, the appellees moved for summary judgment, arguing, inter alia, that Arbella and Carlton had entered into a binding settlement agreement, Rhode Island General Laws Section 27-7-2.2 (which requires that a "written [settlement] offer shall be presumed to have been rejected if the insurer does not respond in writing within a period of thirty (30) days") did not apply because Carlton hadn't filed a civil action before the settlement agreement was formed, and Arbella had not engaged in any deceptive or unfair practices.  In his opposition, Carlton, of course, took the opposite stance on all of this.

In granting the summary-judgment motion in the appellees' favor, as is relevant to our tasks today, the district court rejected Carlton's argument that Section 27-7-2.2 rendered Arbella's acceptance of the settlement offer invalid because it

---

[6] Count II staked out Althea's claims, but, as previously mentioned, the dismissal of those claims wasn't challenged here.

occurred more than the statutorily prescribed thirty days after the offer. See Johnson v. Johnson, No. CV 18-212-JJM-PAS, 2019 WL 2929766, at *3 (D.R.I. July 8, 2019). Rather, the district court determined that the statute's "[i]n any civil action" language requires that a legal proceeding in court needs to be underway to trigger the statute's application. Id. Since Carlton did not file suit until after the settlement-offer-and-acceptance episode, the district court reasoned, the statute did not apply, and the parties had otherwise entered into a valid settlement contract for policy limits, meaning Carlton's Count I claims could not be brought in court. Id.

As to Count III's various Rhode Island and Massachusetts state law unfair insurance practices allegations, the district court was similarly unpersuaded. There was no Rhode Island state law claim under Asermely, 728 A.2d at 464, the district court explained: "[A]lthough it requires insurance companies to 'consider seriously a plaintiff's reasonable offer to settle within the policy limits' as part of their fiduciary duty, it is clear here that Arbella did seriously consider Carlton's offer as they ultimately accepted it about two and a half months after the collision and thirty-two days after receiving the demand." Id. So, "[b]y settling with Carlton for the policy limit a few months after the accident date, and a month after the initial demand . . . , Arbella engaged in timely and meaningful settlement

- 7 -

negotiations and thus fulfilled their common law and statutory duties." Id. Carlton's claim based on Massachusetts state law unfair settlement practices met a similar fate, with the district court reasoning that the record was devoid of the requisite pre-suit written demand for relief. Id. at *4 (citing Mass. Gen. Laws ch. 93A, § 9(3) ("At least thirty days prior to the filing of any such action, a written demand for relief . . . reasonably describing the unfair or deceptive act or practice relied upon . . . shall be mailed or delivered to any prospective respondent.")).

Dissatisfied, Carlton timely appealed.

## STANDARD OF REVIEW

"Our review of the district court's grant of summary judgment is de novo." Brader, 983 F.3d at 53. "A moving party is to be spared a trial when there is no genuine issue of any material fact on the record and that party is entitled to judgment as a matter of law." Id. (quoting Murray v. Warren Pumps, LLC, 821 F.3d 77, 83 (1st Cir. 2016)); see also Fed. R. Civ. P. 56(a). "To avoid 'the swing of the summary judgment scythe,' the nonmoving party must adduce specific facts showing that a trier of fact could reasonably find in his favor." Id. (quoting Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003)). "The nonmovant cannot rely on 'conclusory allegations, improbable inferences, and

unsupported speculation.'"  Id. (citing Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).

## DISCUSSION

Carlton's arguments as to how the district court misstepped fall under three primary headers: (1) Section 27-7-2.2 applies here, so there's no valid settlement contract and Carlton's claims against the appellees should proceed to trial; (2) even if Section 27-7-2.2 doesn't apply, there was a meeting of the minds between the parties that Arbella's failure to accept Carlton's demand within thirty days would revoke that demand; and (3) Carlton's claim that Arbella engaged in unfair and deceptive insurance and settlement practices was not procedurally barred because he sent the requisite notice.  We take these in turn.

### 1.  R.I. Gen. Laws § 27-7-2.2

Carlton's first argument as to why the parties aren't bound by a valid settlement contract succeeds or fails based on the applicability of Section 27-7-2.2, which reads:

> In any civil action in which the defendant is covered by liability insurance and in which the plaintiff makes a written offer to the defendant's insurer to settle the action in an amount equal to or less than the coverage limits on the liability policy in force at the time the action accrues, and the offer is rejected by the defendant's insurer, then the defendant's insurer shall be liable for all interest due on the judgment entered by the court even if the payment of the judgment and interest totals a sum in excess of the policy coverage limitation.  This written offer shall be presumed to have been rejected if the insurer does not respond in writing within a period of thirty (30) days.

R.I. Gen. Laws § 27-7-2.2. Carlton urges that the district court's analysis of the statute was wrong. To Carlton's thinking, the parties never entered into a valid settlement contract: Section 27-7-2.2 applies, and it renders the settlement contract unenforceable because Arbella failed to accept his settlement offer within the thirty-day window the statute lays out. Under Carlton's construction, the statute applies even though he hadn't filed a complaint because "'any civil action' means from the time a torts or contracts-based cause of action begins to accrue" (he did not propose this definition to the district court). And he says the Rhode Island Supreme Court's jurisprudence has assumed applicability of the statute to matters like his, pointing to cases involving a pre-suit settlement offer, followed by an insurer's failure to respond in writing within the thirty-day window. See, e.g., Summit Ins. Co. v. Stricklett, 199 A.3d 523 (R.I. 2019); DeMarco, 26 A.3d 585.

The appellees, naturally, insist that the district court got it right in concluding that the statute is inapplicable: The statute requires that a civil action must be underway, and because no lawsuit had been filed at the time the parties' settlement correspondence was playing out, Arbella simply was not bound by the statute's thirty-day deadline. According to the appellees, this means the offer and Arbella's acceptance were valid under

- 10 -

Rhode Island law, and the enforceable settlement agreement that resulted categorically bars Carlton from pursuing his claims in court.

Plainly, who is correct about the statute's applicability comes down to the definition of "[i]n any civil action" as it appears in Section 27-7-2.2. But because Rhode Island's case law had not yet explicated the meaning of that phrase in this context, and "[b]ecause the Rhode Island Supreme Court is the ultimate arbiter of matters of Rhode Island law," we sought that court's "guidance," W. Rsrv. Life Assur. Co. of Ohio v. ADM Assocs., LLC, 737 F.3d 135, 136 (1st Cir. 2013); R.I. Sup. Ct. R. 6, by certifying our definitional question: "What is the definition of 'civil action' in R.I.G.L. § 27-7-2.2?", Johnson, 952 F.3d at 379.

The Rhode Island Supreme Court's clear answer to that question makes short work of our analysis on Carlton's argument here. Indeed, the Court carefully considered the parties' positions, surveyed Rhode Island case law, and reviewed the statute in question, Johnson, 2021 WL 5996413, at *3, *4, before "answer[ing] the certified question as follows: The term 'civil action' in G.L. 1956 § 27-7-2.2 refers to a judicial proceeding which is commenced by the filing of a complaint and all other

- 11 -

required documents together with the fees prescribed by law," id. at *5.

Accordingly, Carlton is incorrect. No judicial proceeding -- replete with complaint-filing, other documents, and fees -- had been commenced at the time of Arbella's acceptance of the settlement offer, so Section 27-7-2.2 is inapplicable.[7] We affirm the district court's grant of summary judgment on this point.

## 2. Meeting of the Minds

Carlton has a somewhat different -- albeit cursorily offered -- reason in the alternative why the district court shouldn't have granted summary judgment on the issue of the

_____

[7] Carlton acknowledges as much in a document (styled as a petition) he filed swiftly on the heels of the Rhode Island Supreme Court's opinion answering our question.

While we're on the topic of that petition, we note that, in it, Carlton requested that we schedule a hearing for further discussion or argument. But nothing in the Rhode Island Supreme Court's decision is unclear, as Carlton himself seems to acknowledge, and we see no need for any further appellate proceedings or submissions on this score.

The petition also points to a footnote in the Rhode Island Supreme Court's decision that observes that neither its well-known Asermely, 728 A.2d 461, decision nor Asermely's progeny are implicated in the Johnson matter. Johnson, 2021 WL 5996413, at *4 n.6. According to Carlton, this has bearing on our de novo review of his appeal. To the extent he means that footnote's mention of Asermely has anything to do with the applicability of Section 27-7-2.2, he is wrong. To the extent his point is that the Court's mention of Asermely somehow entitles him to additional argument before us, we disagree. And, to the extent he is simply reminding us that Asermely generally is part of other arguments he advances on appeal, we'll get to that shortly.

existence of the valid settlement contract:  even if Section 27-7-2.2 doesn't apply (and, as we've said, it does not), he says there is a genuine issue of material fact regarding whether there was a meeting of the minds between Arbella and Carlton that "a thirty-day time limit was in effect."  Over the course of a section header and a few sentences in his brief to us on appeal, he says as much, adding that the Asermely demand letter's reference to Section 27-7-2.2 "activated" that thirty-day "deadline."

It's unclear to us how a demand letter's unilateral mention of an inapplicable statute that happens to contemplate a thirty-day response period would somehow amount to a meeting of the minds that a thirty-day deadline was "activated."  And the demand did not mention a deadline (a thirty-day one or otherwise) for responding.  Carlton does not point us to any case law to support his legal theory, nor does he point to facts in the record before us that would allow a trier of fact to reasonably find that he is correct about this proposition.  See, e.g., Brader, 983 F.3d at 53; id. ("The nonmovant cannot rely on 'conclusory allegations, improbable inferences, and unsupported speculation.'" (quoting Medina-Munoz, 896 F.2d at 8)).

We need not wrestle with it.  By our lights, this particular way of arguing "no settlement contract" is being debuted on appeal; we discern no clear mention of it in Carlton's papers

below or in the transcript of the summary-judgment hearing.[8] "The Federal Reporter is brimming with opinions from us saying things like: 'arguments not seasonably advanced below cannot be raised for the first time on appeal.'" Reyes-Colón v. United States, 974 F.3d 56, 62 (1st Cir. 2020) (quoting Eldridge v. Gordon Bros. Grp., L.L.C., 863 F.3d 66, 85 (1st Cir. 2017)); see also McCoy v. Mass. Inst. of Tech., 950 F.2d 13, 22 (1st Cir. 1991) (collecting cases) ("It is hornbook law that theories not raised squarely in the district court cannot be surfaced for the first time on appeal.").

"And [Carlton] ma[de] no effort to fit [his] situation within the 'narrowly configured and sparingly dispensed' exceptions to the raise-or-waive rule (as it is known)" -- in fact, he doesn't acknowledge the argument's newness. Reyes-Colon, 974 F.3d at 62 (quoting Daigle v. Me. Med. Ctr., Inc., 14 F.3d 684, 688 (1st Cir. 1994)); see also B & T Masonry Const. Co. v. Pub. Serv. Mut. Ins. Co., 382 F.3d 36, 41 (1st Cir. 2004) (recognizing "that an appellate court has the authority, in its discretion, to consider theories not articulated below," but emphasizing "that exceptions of this kind . . . should be few and far between" --

---

[8] The summary-judgment hearing did discuss the thirty-day period quite a bit, but in connection to Section 27-7-2.2 and its applicability. Indeed, the thrust of Carlton's argument always had been that the statute and its thirty-day deadline applied, and Arbella blew that statutorily prescribed deadline. On this record, it's unclear where else the demand's supposed thirty-day period would have come from.

- 14 -

"[t]he typical case involves an issue that is one of paramount importance and holds the potential for a miscarriage of justice" (quotation marks and citations omitted)).

True, the general issue of whether Arbella and Carlton had formed a valid settlement agreement certainly is something Carlton hotly contested below. But he did not do so by advancing this particular argument. See, e.g., Emps. Ins. Co. of Wausau v. OneBeacon Am. Ins. Co., 744 F.3d 25, 29-30 (1st Cir. 2014) (instructing that "theories not squarely presented below typically cannot be advanced here," and holding that "[w]hen a party places an issue as broad as 'contract interpretation' before the [district] court, it does not thereby preserve every argument that might fall under that rubric" (citations omitted)); United States v. Slade, 980 F.2d 27, 31 (1st Cir. 1992) (emphasizing that "a party is not at liberty to articulate specific arguments for the first time on appeal simply because the general issue was before the district court").

Thus, this argument is not properly before us, and we need say no more.

Taken together, our rejection of these two appellate arguments prompts our affirmance of the district court's summary-judgment conclusion that an enforceable settlement agreement existed, Carlton is bound by it, and thus his Count I allegations cannot proceed.

### 3. Insurer Bad Faith Claims

Carlton's final argument on appeal concerns his insurer bad faith claims, raised in Count III of his complaint:  first, a common-law claim under Rhode Island law as set forth in Asermely; and second, a statutory claim under Massachusetts Chapter 93A.  He tells us both of these should have survived summary judgment.

First, Carlton contends that, under Rhode Island law, Arbella engaged in bad faith in its handling of Carlton's demand.  But we have no need to field this argument -- its underpinnings are either beyond our reach (to support his contention, Carlton says knowledge of insurance agents can be imputed to the insurer as a whole, but he's referring in part to facts beyond the summary-judgment and appellate record) or flawed as a matter of law (he premises this theory on the February 28 acceptance being untimely, but we've already said it wasn't).

Second, Carlton's complaint alleges that Arbella violated various unfair claim settlement practices delineated in sections of Massachusetts General Laws chapter 176D -- and, due to those violations, Carlton has a claim for unfair business practices under Massachusetts General Laws chapter 93A, section 9.  The district court concluded that Carlton was "barred from bringing a 93A claim," though:  "93A requires a prospective consumer plaintiff to send a written demand for relief to the business accused of unfair business practices at least thirty days before the filing

of the action.  Mass. Gen. Laws ch. 93A, § 9(3).  There is no record here of any such pre-suit communication." <u>Johnson</u>, 2019 WL 2929766 at *4.

According to Carlton, that conclusion is wrong because, in his telling, his January 25, 2018 demand letter <u>was</u> the requisite 93A demand letter and the district court was wrong to "disregard" it as noncompliant with 93A's prerequisites.  He urges that it wasn't necessary to include the phrase "93A Demand" anywhere in the letter, and the letter sufficiently describes Carlton's injuries and otherwise meets the requirements as set out in the statute.

But, as best we can tell, Carlton never told the district court he believed his <u>Asermely</u> demand constituted a Chapter 93A letter.  Rather, this appears to be another debuted-on-appeal argument with no attempt made to show that it fits the raise-or-waive exceptions we so sparingly deploy, and this is problematic for the reasons we've already explained in detail supra.  <u>See, e.g.</u>, <u>Reyes-Colón</u>, 974 F.3d at 62; <u>B & T Masonry Const. Co.</u>, 382 F.3d at 41.  Accordingly, we do not need to reach it.

Even if were to assume favorably to Carlton that he did manage to put this squarely before the district court, our review would not provide him the win he seeks.  That is because the <u>Asermely</u> demand letter did not meet Chapter 93A's requirements.

- 17 -

In Massachusetts, a prospective defendant needs to be put on "warning that the claimant intends to invoke the heavy artillery of c. 93A, i.e., multiple damages and the imposition of counsel fees," and this is why 93A demand letters must meet certain requirements. Cassano v. Gogos, 480 N.E.2d 649, 651 (Mass. App. Ct. 1985) (enumerating six factors to be searched for when reviewing would-be Chapter 93A demand letters: express reference to 93A; express reference to the consumer protection act; an "assertion that the rights of the claimants as consumers have been violated"; an "assertion that the defendant has acted in an unfair or deceptive manner (G.L. c. 93A, § 2[a])"; "any reference that the claimants anticipate a settlement offer within thirty days"; or an "assertion that the claimant will pursue multiple damages and legal expenses, should relief be denied"). The Cassano court was clear that, "in order to qualify as a written demand under c. 93A, a letter must, in addition to defining the injury suffered and the relief sought, mention at least one of the six factors we have enumerated (or contain some other signal which will alert a reasonably perceptive recipient)." Id. But there, the letter purporting to be a Chapter 93A demand was inadequate -- it "managed to set forth in part the plaintiffs' grievances" and generally communicated "what they expected the defendant to do about them," but overall it failed to "characterize[] the claim as one under the consumer protection statute[,]" id. at 650, and neglected to

- 18 -

include any one of the six enumerated factors, id. at 651. See also Passatempo v. McMenimen, 960 N.E.2d 275, 293 (Mass. 2012) (endorsing Cassano's test for 93A demand letters and finding that "the trial judge correctly dismissed the G.L. c. 93A claims" in part because the demand letter "failed to identify or describe any unfair or deceptive act or practice") (citing Cassano, 480 N.E.2d at 651); see also Mass. Gen. Laws ch. 93A, § 9 (requiring on its face that the "written demand" must "reasonably describ[e] the unfair or deceptive act or practice relied upon and the injury suffered").

Here, Carlton's demand letter similarly falls flat as a matter of law on the Chapter 93A front in a few ways. For one thing, it refers to Rhode Island law, making no mention of Massachusetts law. And moreover, it makes no reference to Chapter 93A (contrary to Carlton's assertion otherwise, stating "93A" is a factor here), nor does it mention a thirty-day deadline, multiple damages or legal fees, any alleged unfair or deceptive practice by Arbella, any purported violation of Mass. Gen. Laws ch. 176D, or any other allegation of insurer misconduct. See Cassano, 480 N.E.2d at 651. Rather, the letter demanded settlement for the $100,000 policy limits and indicated that, if the policy-limits demand was rejected, Rhode Island law would provide a remedy.

The cases Carlton cites on appeal in support of the proposition that his demand met the requirements of a 93A demand

letter don't support his claim. The demand letter in <u>Richards</u> v. <u>Arteva Specialties S.A.R.L.</u>, for example, "explicitly alleg[ed]" the defendants' "unfair or deceptive act or practice" by describing the "details of" an alleged conspiracy. 850 N.E.2d 1068, 1075 (Mass. App. Ct. 2006). And, in <u>Gore</u> v. <u>Arbella Mut. Ins. Co.</u>, the demand letter "demand[ed] that [the insurer] tender the $20,000 policy limits within thirty days," which, as we've just observed, Carlton's demand letter did not do. 932 N.E.2d 837, 841 (Mass. App. Ct. 2010).

And so, with no requisite Chapter 93A demand for relief in play, the district court was right to grant summary judgment as to Carlton's Chapter 93A claim as well.

## CONCLUSION

For these reasons, we **<u>affirm</u>** the district court's entry of summary judgment. Each side shall bear its own costs.